701 So.2d 213 (1997)
PETROLEUM RENTAL TOOLS, INC.
v.
HAL OIL & GAS COMPANY, INC., et al.
RON B. BRIDGES & ASSOCIATES, INC.
v.
HAL OIL & GAS COMPANY, INC. et al.
Nos. 95 CA 1820 R, 95 CA 1821 R.
Court of Appeal of Louisiana, First Circuit.
August 22, 1997.
Rehearing Denied November 12, 1997.
*214 Lee A. Archer, Lake Charles, for Plaintiffs Petroleum Rental Tools, Inc., Ron B. Bridges & Associates, Inc.
Robert L. Redfearn and Robert L. Redfearn, Jr., New Orleans, and L. Linton Morgan, Covington, for Defendant Hal Oil & Gas Company, Inc.
Milo A. Nickel, Jr., Lake Charles, for Defendant Tadlock Pipe & Equipment, Inc.
Before WATKINS and FOIL, JJ., and TANNER,[1] J. Pro Tem.
WATKINS, Judge.
This case is before us on remand from the Louisiana Supreme Court, with instructions to consider the percentage of fault attributable to Tadlock Pipe and Equipment, Inc., (Tadlock) as a nonparty to this tort suit pursuant to LSA-C.C.P. art. 1812. Hal Oil and Gas Company, Inc. (Hal Oil) sued Tadlock in redhibition, and the trial court found that the casing which Tadlock supplied was defective and not fit for its intended use. The trial court rendered judgment in favor of Hal Oil in the amount of $94,560.00, the cost of the casing. Tadlock appealed, and we affirmed that holding in the original, unpublished opinion, 96 CA 1819. However, Hal Oil did not sue Tadlock under any theory other than redhibition, such as negligence, strict liability, or product liability; nor did Hal Oil appeal the judgment in its favor which was limited to the cost of the casing and did not include damages occasioned by the redhibitory defect.
Tadlock was made a third party defendant by Ron D. Bridges and Associates, Inc. (Bridges), which alleged that the casing as supplied was not properly tested or inspected and was defective, mislabeled and/or not suited for its intended purposes, and that Tadlock was or should have been aware of the defect. Bridges further alleged that Tadlock did not advise Bridges that the casing was defective and/or not suited for its intended purpose. On remand, we were instructed further by the Louisiana Supreme Court to reconsider whether the dismissal of Bridges's third party demand against Tadlock was preserved on appeal.

FACTS
We will briefly reiterate the facts, which were summarized in our original opinion. This case involved property damage to the FINA No. 1 well, an oil well being drilled by defendant and plaintiff in reconvention, Hal Oil. Defendant in reconvention, Bridges, was engaged by Hal Oil as an operator's representative to represent Hal Oil in the *215 drilling and completion operations. Mr. Bridges is a drilling engineer.
In the first week of December, 1989, Mr. Bridges requested 20 bids for both new and used casing which was to be utilized in the drilling operation. He requested a string of 5.5-inch casing and a string of 7-inch casing. He received in response 15 bids for new casing and three for used casing. After the log for the initial drilling operation was presented, it appeared the well was not as large as originally had been anticipated. According to Mr. Bridges, it was "a marginal well from the very beginning."
After the preliminary log came in, a meeting was held between the following persons who decided to buy the 5.5-inch casing from Tadlock: Hal Callais, the owner of Hal Oil; Dick Guidry, the president of Hal Oil; a representative of Inland Bay; and Mr. Bridges. Mr. Callais testified that Mr. Bridges was supposed to look after the interests of Hal Oil, represent the company, make recommendations, and advise the company. Mr. Bridges initially testified that he was not part of the decision as to what type of casing would be used in an attempt to complete the well. However, he eventually testified that he did recommend Tadlock, based on the "best availability and deliverability." Tadlock's price was the highest of the three companies that bid to supply used casing.
The Tadlock casing had been hydrostatically tested, to show if it had any leaks or thin places, and to show if the connections were holding, and it had been drifted. Drifting indicates whether the casing is within APO premium grade to standard. It had not, however, been electronically inspected, which determines if there are any thin walls or nicks inside the pipe that are not observable by visual inspection. The record showed that electronic inspection would take three days to perform. Mr. Bridges testified he did not, as a practice, have tests performed on pipe he did not own. He did not recommend to Hal Oil that the pipe be electronically inspected.
The supplier delivered the casing to the drilling site on the night of December 21, 1989. The weather was bitterly cold, with temperatures around seven degrees. At 7:30 a.m. on December 27, 1989, the drilling crew started running the 5.5-inch casing. At 9,720 feet, the casing "sat down on a ledge" in the hole. The crew picked up the pipe three times in an attempt to get it to roll off the ledge and continue in the hole. At the fourth try, the pipe stuck on bottom. Mr. Bridges testified that he pulled the casing at a weight of 275,000 pounds when it separated in two and fell to the bottom of the hole. The oil field standard is that casing should never be pulled at a weight above 80 percent of its rated API strength. For the Tadlock casing at issue, that weight was 348,000 pounds; 80 percent of that weight is 278,400 pounds.
Mr. Bridges attempted several operations in order to cement the productive zones near the bottom of the well. Using 2 7/8-inch workstring which he obtained from his own company, Petroleum Rental Tools, Inc. (Petroleum), he tried to mill the hole, but was not successful.
On or near January 6, 1990, Larry Hargrave replaced Mr. Bridges on the well site to attempt a salvage operation on the well. Mr. Hargrave was performing a "primary cement job," using a cement retainer and a stinger. The stinger is screwed onto the end of the workstring and is run down the well to the retainer. The stinger opens the retainer's check valve, and cement is pumped through the workstring and stinger into the area between the cement retainer and a float collar, and then out through perforations. When the stinger is pulled out, the check valve closes and cement is thus prevented from flowing back into the casing.
Mr. Hargrave stung into the retainer, established circulation, and began pumping cement. When he attempted to pull the stinger out of the retainer, the workstring parted 20 feet below the rig floor. The cement then flowed back into the casing. Because part of the workstring was then cemented into the well, the well could no longer be salvaged.
Mr. Hargrave testified that before the workstring parted, he thought the well could be salvaged. An expert for Hal Oil and an expert for Bridges gave their opinions as to the chances of saving the well after the casing *216 parted and after the cement job was performed.
The trial court found that the 5.5-inch casing supplied by Tadlock had a redhibitory defect. It found that Tadlock's waiver of implied warranty was invalid and awarded judgment for the cost of the casing.
The trial court further held that the workstring supplied by Petroleum was defective because it failed at less than 80 percent of its tensile strength, and that Petroleum was the manufacturer because it modified the workstring. The trial court also found that Petroleum, as the lessor of the workstring, was strictly liable for its defects. Petroleum was granted a credit in the amount of $50,233.45 to be offset against Hal Oil's judgment against it, representing rentals due for part of the workstring which Hal Oil had recovered from the failed well and used in another drilling operation.
As for Mr. Bridges, the court ruled that he was negligent "in recommending the casing, failing to explain the risks of the casing to Hal so that they can make an intelligent assessment of their risks, failure to advise Hal as to the possibilities and uses of the electronic inspection of the ... casing." The trial court allocated fault equally between Bridges and Petroleum, finding them solidarily liable to Hal Oil for damages in the amount of $1,112,850.54, but assigned no fault to Tadlock for the loss of the well. Bridges, Petroleum, and Tadlock appealed from the judgments against them.
On appeal, we affirmed the judgment of the trial court, except the finding that Bridges and Petroleum were solidarily liable to Hal Oil. We also found that Bridges did not appeal the dismissal of its third party demand against Tadlock, asserting claims for indemnity or contribution.
In their application to the Louisiana Supreme Court for writs, Petroleum and Bridges argued that fault should have been apportioned to Tadlock, because both the lower court and this court found that the casing supplied by Tadlock was defective and contributed to the loss of the well. Mr. Bridges also argued that it was error to find that he owed a duty to warn Hal Oil of the risks inherent in used casing and to advise that the casing be tested. Petroleum also argued that it was error to hold that the workstring was defective or unreasonably dangerous.

APPORTIONMENT OF FAULT TO TADLOCK
The Louisiana Supreme Court ordered that we consider Tadlock's percentage of fault as a nonparty to the reconventional demand brought by Hal Oil against Bridges and Petroleum. One pertinent article is LSA-C.C.P. art. 1812, which reads, in part:
C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
* * * * * *
(2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:
(i) Whether such fault was a legal cause of the damages, and, if so:
(ii) The degree of such fault, expressed in percentage.
(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.
(ii) A person who exists but whose identity is unknown.
(iii) A person who may be immune from suit because of immunity granted by statute.
Since 1991, the Louisiana Supreme Court has rendered several opinions concerning the quantification of employer fault in third-party tort actions, pursuant to LSA-C.C.P. art. 1812(C) and LSA-C.C. art. 2324(B). In Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d 180, the court discussed the development of the jurisprudence on the subject. In Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 *217 (La. 6/30/95); 657 So.2d 975, the court held that the legislature had not specified which parties should have their fault quantified as directed in Article 1812(C). Keith, p. 3, 694 So.2d at 182; Cavalier, 657 So.2d at 980-981. The Cavalier court held that the quantification of fault of a nonparty is appropriate when one tortfeasor has settled with and obtained a release from the tort victim, and when the nonparty is a person whose negligence may be imputed to the plaintiff or defendant. Otherwise, "... juries should not be required to quantify the fault of a person that no party sees fit to join in the suit as a defendant or third party defendant unless there is a compelling reason." Cavalier, 657 So.2d at 982.
However, the legislature in Acts 1996, 1st Ex.Sess., No. 3, Sec. 1, effective April 16, 1996, amended LSA-C.C. art. 2323 to provide expressly that:[2]
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
In Keith, the court held that this clear pronouncement of the legislature invalidated the holdings in Cavalier as to the quantification of fault of nonparties, and that Act 1996, 1st Ex.Sess., No. 3, Sec. 1, was procedural and should be applied retroactively. The court stated, "Viewing the applicability of Act 3 to the case sub judice, it is clear that the substantive right to allocate fault was created in 1979 with the introduction of comparative fault. Act 3 simply delineates a method for enforcing that substantive right as particularly applied to the statutory employer." Keith, p. 7, 694 So.2d at 183.
We are bound by the holding in Keith even though the instant case is not one involving employer fault. Therefore, we must determine whether, in this case, apportionment of fault to Tadlock is appropriate under the facts adduced at trial. Article 2323 B provides that the "provisions of Paragraph A shall apply to any claim for recovery of damages for ... loss asserted under any law or legal theory of liability, regardless of the basis of liability." (Emphasis supplied.)
In the instant consolidated cases, the basis of Tadlock's liability was the redhibitory defect in the casing it sold to Hal Oil. Under the pertinent statutes and jurisprudence, knowledge of the latent defect in the used casing can be imputed to Tadlock, as a seller that processed the used casing for resale. As such, Tadlock was responsible for general damages that stemmed from the buyer's use of the defective casing, which in this case was the loss of the well. See, Foust v. McKnight, 95-2008 (La.App. 1st Cir. 5/10/96), 675 So.2d 1147; writ denied, 96-2117 (La. 11/8/96), 683 So.2d 277; MTU of North America, Inc. v. Raven Marine, Inc., 603 So.2d 803 (La.App. 1st Cir.1992), writ denied, 612 So.2d 55 (La.1993). Therefore, we conclude that Tadlock's liability for the redhibitory defect qualifies as "fault" under *218 Article 2323 A. To hold otherwise would be to fail to give effect to the phrase in Article 2323 B, "regardless of the basis of liability."
We read the remand as a mandate to apportion fault among Tadlock, Bridges, and Petroleum. In our opinion, Mr. Bridges's fault that contributed to the loss of the well was indirect and was partially justified because of the need to get the job done without too much delay. The fault of the suppliers, Tadlock and Petroleum, was more serious because their products were not suited for their intended use and were directly responsible for the loss of the well. Furthermore, Petroleum's fault was greater than Tadlock's because there was a chance of saving the well even after the 5.5-inch casing failed, but no chance after the workstring failed. Therefore, we assess fault as follows: Tadlock, 40 percent; Bridges, 10 percent; and Petroleum, 50 percent.
We note that the effect of allocating 40 percent of the fault for the loss of the well is to reduce Hal Oil's judgment against Bridges and Petroleum by 40 percent. There will be no further judgment against Tadlock, as Tadlock is a non-party to Hal Oil's tort suit against Bridges and Petroleum. Hal Oil's failure to pursue a claim for loss of the well against Tadlock cannot deprive Bridges and Petroleum of the benefits of a reduction of their liability pursuant to the provisions of LSA-C.C. art. 2323.

THE APPEAL OF THE THIRD PARTY DEMAND AGAINST TADLOCK
We held in the original opinion that Bridges did not appeal the dismissal of its third party demand against Tadlock. Upon reconsideration, we find that conclusion was erroneous.
Plaintiffs and defendants in reconvention, Bridges and Petroleum, appealed devolutively from the final judgment rendered in this action in the lower court. That judgment encompassed the dismissal of Bridges's third party demand against Tadlock, stating, "It is further ordered, adjudged and decreed that there be judgment dismissing the claims of Ron B. Bridges and Associates, Inc. against Tadlock Pipe and Equipment Company, Inc., at their cost."
Under LSA-C.C.P. art. 2129, an assignment of errors is not necessary on appeal. Where the appellant designates only portions of the record on appeal, he must serve with his designation a concise statement of the points on which he intends to rely, and the appeal will then be limited to those points. In order to take a limited appeal, the appellant must comply with these provisions. Miller v. Miller, 405 So.2d 534 (La.App. 3rd Cir.1981). Conversely, it follows that because no such designation of portions of the record was made by Bridges in this case, the dismissal of the third party demand was encompassed in the appeal of the lower court's judgment.
However, we conclude that Bridges's argument that the third party demand against Tadlock was improperly dismissed is without merit.
In pertinent part, LSA-C.C.P. art. 1111 provides:
The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand.
Contribution is allowed only between tortfeasors who are solidarily liable. Narcise v. Illinois Central Gulf Railroad Co., 427 So.2d 1192 (La.1983). Here, Tadlock is not a tortfeasor. Further, Bridges cannot recover in indemnity. It is only where there is a party not actually at fault, whose liability is vicarious and derivative because it results from the fault of others, that the party may be indemnified by such others. Dupree v. Pechinay Saint Gobain Co., 369 So.2d 1075 (La.App. 1st Cir.), writ denied, 371 So.2d 1341 (La.1979). Bridges's liability results from a failure to recommend that the Tadlock used casing be tested, and such fault cannot be attributed to Tadlock.
Accordingly, we reverse the judgment of the trial court holding Bridges and Petroleum liable in solido. We amend the original judgment in favor of Hal Oil to cast Ron D. Bridges and Associates, Inc. for 10 percent of $1,112,850.54, and Petroleum Rental Tools, *219 Inc. for 50 percent of $1,112,850.54, subject to a credit to Petroleum Rental Tools, Inc. in the amount of $50,233.45. We cast Ron D. Bridges and Associates, Inc., Petroleum Rental Tools, Inc., and Hal Oil & Gas Company, Inc. for equal shares of all costs of these appeals.
JUDGMENT REINSTATED AND AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Our original opinion in this matter was handed down on April 4, 1996, before the effective date of Acts 1996, 1st Ex.Sess., No. 3, Sec. 1.