JaWATKINS, Judge.
This is an appeal from a judgment against Reliance Insurance Company of Illinois (Reliance) and in favor of Hal Oil & Gas Company, Inc. (Hal Oil). Hal Oil obtained a judgment against Ron Bridges & Associates, Inc. (Bridges) and Petroleum Rental Tools, Inc. *220 (Petroleum) in excess of $1,000,000.00 for damages Hal Oil sustained as a result of the loss of the FINA No. 1 oil well. Bridges and Petroleum were insured by Reliance under a comprehensive general liability insurance policy. Hal Oil filed a supplemental and amended third party demand in the underlying suit, seeking to recover from Reliance any damages it might be awarded at trial. It moved to sever this direct action against Reliance from the trial of the main demand.
Trial of the main demand was held on December 21, 22, and 23, 1994. The trial court found that Bridges and Petroleum were liable in solido to Hal Oil for damages resulting from the loss of the oil well. In oral reasons for judgment, the trial court found that Bridges’s negligence consisted of Ron Bridges’s recommending to Hal Oil that Hal Oil buy the Tadlock easing which failed in the well, failing to explain the risks of the casing to Hal Oil, and failing to advise Hal Oil as to the possibilities and uses of electronic inspection of the casing. Petroleum was negligent and responsible for damages sustained by Hal Oil because Petroleum’s product, 2%-ineh workstring, failed at less than 80 percent of its tensile strength in the salvage operation to rescue the well. A judgment finding Petroleum and Bridges each 50 percent at fault was rendered on February 7,1995.[2]
The trial court denied Hal Oil’s motion for summary judgment on the issue of insurance coverage on August 17, 1995, and trial in the direct action was held on ^December 7,1995. In oral reasons for judgment, the trial court found that there was coverage under the Reliance comprehensive general liability (CGL) policy for the judgment rendered February 7, 1995, in favor of Hal Oil and against Reliance’s insureds, Bridges and Petroleum. It rejected Reliance’s argument (1) that the policy afforded no coverage because there was no “occurrence” as defined under the policy, and (2) that the “work product” exclusion applied to Bridges. Reliance appeals from this judgment. Hal Oil answers the appeal, arguing that there were actually two occurrences and therefore the policy should provide coverage up to $2,000,000.00, or $1,000,000.00 in limits per occurrence.
ANALYSIS
Defendant/appellant, Reliance, argues on appeal that there was no coverage afforded by the comprehensive general liability policy issued to Bridges for its liability to Hal Oil in the judgment in the underlying case for two reasons.[3] First, there was no “occurrence” as defined under the policy because the damages were caused by faulty workmanship and breach of workmanlike performance, which do not constitute an occurrence. Second, even if there were an occurrence, the policy’s “work product” exclusion operates to exclude coverage because that provision excludes damages for faulty workmanship and breach of workmanlike performance.
Hal Oil responds by arguing that the parting of the casing in the well, which caused it to fail, was an accident and fell within the definition of “occurrence,” and that Reliance’s argument actually equates the term “occurrence” with the policy’s “work product” exclusions. Further, Hal Oil argues that the “work product” exclusion upon which Reliance depends does not exclude coverage because its language contemplates an affirmative act rather than an omission. Bridges’s negligence, as articulated by the *221 trial court in oral reasons for judgment, consisted of recommending that Hal Oil buy used casing, failing to recommend that the used easing be tested, and |4failing to explain the risks of used casing to Hal Oil.
We -will first address Reliance’s argument that Bridges’s actions, resulting in liability to Hal Oil, did not constitute an occurrence under the policy, so coverage was never triggered.
The definition of “occurrence” as found in the policy reads as follows:
“[Ojceurrence” means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
Reliance contends that Bridges’s negligence consisted of faulty workmanship, and that faulty workmanship cannot be an occurrence under its CGL policy issued to Bridges. It relies primarily upon the case of Hallar Enterprises, Inc. v. Hartman, 583 So.2d 883 (La.App. 1st Cir.1991). In Hallar, Hartman, a contractor, graded and shaped an existing road base and overlaid it with asphalt. He had concluded, based upon representations made by Hallar, the owner of the road, that- the base was sufficient to support the additional asphalt. The road failed because the base could not support the additional asphalt. Hartman, the contractor, filed a third party demand against his insurer to defend him from Hallar’s lawsuit against him. The trial court held, interpreting “work product” and “completed operations” exclusions, that the insurer had a duty to defend Hartman based upon the allegations of the petition. The claims against Hartman were that he failed to adequately design the road, failed to warn Hallar of the consequences of building the road without prior subsurface preparation, furnished Hal-lar with faulty advice concerning the building of the road, and faded to provide adequate engineering services in connection with the road. This court reversed finding that all of Hallar’s damages arose out of “work performed by the named insured,” which was excluded by the work product/completed operations exclusion.
The Hallar court did not interpret the definition of “occurrence.” It based its holding on several prior cases which had found that work product exclusions similar to the ones at issue in Hallar excluded coverage for defective or faulty workmanship and consequential damages arising therefrom. See, Hallar, 583 So.2d at 890 and cases cited therein.
| gRelianee argues that Hallar' is identical factually to the present case, because Bridges’s negligence lay in faulty workmanship and breach of workmanlike performance. In Hallar, plaintiffs claim against Hartman was under LSA-C.C. art. 2762, which affords a cause of action against an architect or contractor for a “building” which falls to ruin “on account of the badness of the workmanship.” The court found that “Hartman’s failure to warn of an insufficiency in the foundation upon which it built is nothing more than a breach of its warranty of workmanlike performance. Any damages arising from this necessarily arise from the work performed by the contractor, in this case Hartman.” Hallar Enterprises, Inc. v. Hartman, 583 So.2d at 890. Therefore, this court held that the work products and completed operations exclusions in the policy at issue were designed specifically to exclude property damage to work performed by Hartman, which arose out of operations or a reliance upon a representation or warranty made with respect thereto.
From Hallar, and subsequent eases holding that a policy containing a work product exclusion excludes coverage for damages to the work product of the insured due to negligent, faulty or defective construction and workmanship, Reliance argues that Bridges’s “faulty workmanship” is not an “occurrence.” See Rivnor Properties v. Herbert O’Donnell, Inc., 92-1103 (La.App. 5th Cir. 1/12/94); 633 So.2d 735, writs denied, 94-1293, 94-1305 (La.9/2/94); 643 So.2d 147. However, Hallar did not interpret the definition of “occurrence,” but relied upon specific work product and completed operations exclusions to find that Hartman’s actions were not covered by the policy.
In Riley Stoker v. Fidelity and Guaranty Insurance Underwriters, Inc., 26 F.3d *222 581, 586 (5th Cir.1994), the court stated that Louisiana courts have defined “occurrence” by reference to the exclusions typically found in a comprehensive general liability policy, namely, the product, work, and failure to perform exclusions. If there is a conflict between Louisiana’s judicial gloss on the definition of “occurrence” and the policy language, the conflict must be resolved in favor of the insured. In other words, if the damages are not excluded under a specific policy exclusion, there is a conflict Isbetween Louisiana’s definition and the policy definition, and therefore, the damages are covered.
We must determine whether Hal Oil’s damages are excluded under a specific policy exclusion. If not, there is a conflict between our courts’ definition of “occurrence” and the policy definition, and the damages are covered. See Riley Stoker Corporation v. Fidelity and Guaranty Insurance Underwriters, Inc., 26 F.3d 581, 586. Therefore, we now examine the exclusions claimed by Reliance to apply to defeat coverage for Bridges’s negligence.
The applicable language in Reliance’s CGL policy reads as follows:
Exclusions
This insurance does not apply:
(k) to property damage to
(1) property owned or occupied by or rented to the insured,
(2) property used by the insured,
(3) property in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control; but parts (2) and (3) of this exclusion do not apply with reference to liability under a written sidetrack agreement and part (3) of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of an elevator at premises owned by, rented to or controlled by the named insured;
* # * * * *
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
The “Broad Form Property Damage Liability Coverage (Including Completed Operations)” endorsement to the primary policy replaces the “completed operations” and “work product” exclusions with the following:
(A) Exclusions (k) and (o) are replaced by the following:
i»: # # ‡ * sfc
(2) except with respect to liability under a written sidetrack agreement or the use of elevators
(a) to property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured.
(b) to tools or equipment while being used by the insured in performing his operations.
17(c) to property in the custody of the insured which is to be installed, erected or used in construction by the insured.
(d) to that particular part of any property, not on premises owned by or rented to the insured,
(i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
(ii) out of which any property damage arises, or
(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured;
(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company’s manual as “including completed operations,” to property damage to work performed by the named insured arising out of such work or any *223 portion thereof, or out of such materials, parts or equipment furnished in connection therewith.[4]
Reliance argues that (A)(2)(d) applies to exclude coverage for Bridges’s negligent acts. We do not agree. Bridges was neither performing an operation on the FINA No. 1 well which failed, nor was restoration, repair or replacement of the well (“that particular part of any property, not on premises owned by or rented to the insured”) made necessary by reason of Bridges’s “faulty workmanship thereon.” The “Broad Form Property Damage Liability Coverage (Including Completed Operations)” affords broader coverage than did the primary policy. The exclusionary language relied on by the insurer in Hollar, ultimately found to defeat coverage in that case, was “to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.” Hallar, 583 So.2d at 889. That same language, originally contained in exclusion (o) in the Rebanee policy, was replaced by Section VI(A)(1) through (3), cited Igabove. Bridges’s negligence could be characterized as a negligent failure to warn of dangers concerning the used casing which ultimately caused the well to fail. Exclusions for completed operations and products hazards have been held not to apply to defeat coverage in cases in which the insured, who was performing services, failed to warn where there is no affirmative duty to warn. See Templet v. Goodyear Tire & Rubber Company, Inc., 341 So.2d 1248 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1077 (La.1977).
We hold that coverage was afforded under Reliance’s CGL policy for the damages awarded to Hal Oil in the underlying February 7, 1995 judgment, and affirm the judgment of the trial court.[5] All costs of this appeal are assessed to defendant, Reliance Insurance Company,
AFFIRMED.

. Bridges, Petroleum, and Tadlock Pipe & Equipment, Inc. appealed the judgment rendered against them in consolidated cases 95 CA 1820 and 1821, 701 So.2d 213 (La.App. 1st Cir.1997). A judgment was rendered by this court in that appeal on April 4, 1996, affirming the judgment of the trial court in all respects save for the finding that Bridges and Petroleum were liable in solido. The Louisiana Supreme Court granted writs, Petroleum Rental Tools, Inc. v. Hal Oil & Gas Company, Inc. and Ron B. Bridges & Associates, Inc. v. Hal Oil & Gas Company, Inc., 96-1819 (La.11/8/96), 683 So.2d 253, vacating and setting aside the judgment and remanding the case to this court to consider Tadlock’s percentage of fault as a non-party to the tort suit pursuant to LSA-C.C.P. art. 1812, and to reconsider whether the dismissal of Bridges and Petroleum's third party demand against Tadlock was preserved on appeal. Our opinion in the case on remand is rendered this date in consolidated cases 95 CA 1820 and 1821, 701 So.2d 213 (La.App. 1st Cir.1997).

. Reliance does not argue on appeal the trial court’s finding that the CGL policy afforded coverage for the negligence of Petroleum for the underlying February 7, 1995 judgment, but limits its argument to the finding that the policy afforded coverage for Bridges’s negligence.

. We note that the "completed operations” hazard, or pertinent exclusions, is not relevant here. The casing parted and the well failed before Bridges’s consulting services were completed. The drilling of the well was, obviously, not concluded when the casing parted and the well failed.

. In light of our opinion rendered this date in 95 CA 1820 R, 701 So.2d 213 (La.App. 1st Cir. 1997), in which we reduce the combined liability of Bridges and Petroleum to 60 percent of $1,112,850.54, the issue raised in Hal Oil's answer to Reliance’s appeal is moot.