887 So.2d 39 (2004)
Garnett A. BROWN, Reginald D. Brown, Chadwick L. Williams, and Corey A. Williams
v.
ASCENSION PARISH, Ascension Parish School Board, and East Ascension Parish High School.
Nos. 2003 CA 1279, 2003 CA 1280.
Court of Appeal of Louisiana, First Circuit.
August 18, 2004.
*40 Stanley Davis, III, Baton Rouge, Daria Burgess Diaz, New Orleans, Counsel for Plaintiffs/Appellants Garnett A. Brown, et al.
Gus A. Fritchie, III, Bennett H. Biever, New Orleans, Counsel for Defendants/Appellants Ascension Parish Police Jury and Coregis Insurance Company.
Benjamin C. Vega, Jr., Donaldsonville, Counsel for Defendant/Appellee Janice Claiborne.
*41 Marvin Gros, Donaldsonville, Counsel for Defendant/Appellee Tilicius Irvin.
Before: CARTER, C.J., FOIL, FITZSIMMONS, GAIDRY and MCDONALD, JJ.
FOIL, J.
Ascension Parish Police Jury and Coregis Insurance Company (Parish) appeal a trial court judgment that assessed the Parish with 10% fault for the fatal shooting of Valmond "J.B." Brown, III (J.B.) by Tilicius Irving (Tilicius).[1] Following our review of the record and relevant law, we reverse.
On the evening of May 8, 1996, the Ascension Parish Darrow Community Center (Center) was rented for a high school graduation party. During the party, a physical fight erupted inside the Center shortly before midnight. After the fight had subsided and the participants had gone outside of the building, Tilicius Irving shot and killed J.B.
J.B.'s wife, Shanira Lynn Brown (Lynn), individually and on behalf of Lynn's minor daughter Dominique Brown (Dominique),[2] brought a civil action against the Parish for the harm suffered by the plaintiffs as a result of J.B.' s death. The case was subsequently consolidated with a lawsuit that had been previously initiated by Garnett A. Brown, Reginald D. Brown, Chadwick L. Williams, Corey A. Williams, Calvin Lewis, and Ruthie Lewis.[3] The plaintiffs alleged that the Parish had knowledge that violent altercations such as the fight and subsequent shooting could occur during the party, and theorized that the Parish therefore owed a duty to provide adequate supervision or security for the party.
The trial court found the Parish liable under two theories. First, the court concluded that the director of the Center, Ms. Annette Williams, had knowledge that there was a possibility of danger based on the history of criminal activity at the Center, and because of the Center's violent history, the Parish should have required at least minimal security for the party. The court found that Ms. Williams knew that there were troublemakers on the premises and should have warned the police of the fight as soon as it erupted. Her failure to notify the police in a timely manner of the fight, the court concluded, rendered the parish at fault for the shooting death.
The court awarded wrongful death damages to Lynn in the sum of $250,000.00. J.B. and Lynn's daughter, Dominique, was awarded $200,000.00 for wrongful death damages. Additionally, damages for loss of services and support were established at $40,000.00, and survival damages of $85,000.00 were awarded. J.B.'s brothers were awarded LeJeune damages in the following sums: Reginald was granted $50,000.00; Garnett, Chadwick, and Corey were each given the sum of $10,000.00.

BREACH OF DUTY BY ASCENSION PARISH
On appeal, the Parish, defendant/appellant, assigns as error the trial court's finding that it owed and breached a duty to provide security on the night J.B. was shot. In their answer to the appeal, plaintiffs/2nd appellants, assign as error *42 the court's failure to assign a higher degree of fault to the Parish than 10%.
The trial court's allocation of 10% fault to the Parish centered on the failure of the Parish to exercise reasonable care to protect against the violence that ensued. Attribution of fault against the Parish pursuant to La. C.C. art. 2315 entails a duty-risk analysis. Henry v. Parish of Jefferson, Department of Parks and Recreation, 02-748, p. 4 (La.App. 5 Cir. 12/30/02), 835 So.2d 912, 914. The existence vel non of a duty owed poses a question of law. Peterson v. Gibraltar Savings & Loan, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204.
The law recognizes that a property owner has a general duty relative to the safety of persons on his premises to exercise reasonable care and not to expose such persons to unreasonable risks of injury or harm. Mundy v. Department of Health & Human Resources, 620 So.2d 811, 813 (La.1993). However, this duty does not extend to the protection of persons on the premises from unforeseen or unanticipated criminal acts of third persons. Id. Determining when a crime is foreseeable is a critical inquiry in the duty equation, because it is the foreseeability of the crime on the defendant's property and the gravity of the risk that determine the existence and extent of the defendant's duty. Pinsonneault v. Merchants & Farmers Bank & Trust Company, 01-2217, p. 7 (La.4/3/02), 816 So.2d 270, 276. In making this determination, the most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, although the location, nature and condition of the property should also be taken into account. As the supreme court stated in Pinsonneault, "[i]t is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises." Id.
In this case, the trial court held that the Parish had a duty to provide security for the graduation party. In order to impose this duty on the Parish, the trial court had to find at a minimum that the evidence established the risk of a fatal shooting during an event held at the Center was foreseeable. However, the record does not support the trial court's conclusion that there was a high probability of criminal activity at the Center sufficient to impose a duty to provide security for the party. Although Ms. Williams stated that she had heard gunshots in the area on other occasions, there was no evidence of a prior shooting during an event held at the Center. Deputy Tyson Dennis, who patrolled the area for over a year and a half before the shooting, attested that he could not recall one other shooting at the Center. Plaintiff offered evidence indicating that there had been a few thefts and one act of vandalism at the Center. Because the evidence did not establish that there was a history of criminal activity sufficient to place the Parish on notice that a shooting might occur on the premises, the trial court imposition's of a duty on the Parish to provide security for the party is legally erroneous and must be reversed.
The trial court also found that the Parish was at fault in the shooting death because Ms. Williams failed to inform the police of the fight in a timely manner. However, we find that if there was a duty to inform the police of the fight prior to the fatal shooting, that duty rested with those who leased the premises, not Ms. Williams. The record reflects that the Center was leased by Janice and/or Nyokee Claiborne for a graduation party for Janice's son. Ms. Williams was warned by Officer Dennis, whom she asked to patrol *43 the Center that evening, that there were some suspicious persons on the premises and a fight may ensue. Ms. Williams told Officer Dennis that the premises had been leased to the Claibornes, and Officer Dennis apprised Janice Claiborne of the possibility of a fight. According to Officer Dennis, Ms. Claiborne replied that she just wanted everyone there to have a good time. The Claibornes, as lessees of the premises, were in control of the Center at the time of the fight and subsequent shooting. The lessees were responsible for crowd control, and the lessees should have apprised the police of the brawl when it first started. Thus, we find that the trial court committed legal error in imposing a duty on the property owner to alert the authorities of a fight occurring at the leased premises prior to the fatal shooting.

CONCLUSION
For the foregoing reasons, we reverse the trial court's finding of liability on the part of the Parish for the shooting death. As such, we pretermit discussion of all other issues raised in this appeal regarding damages. All costs of this appeal are assessed to plaintiffs, Garnett A. Brown, Reginald D. Brown, Chadwick L. Williams, Corey A. Williams, Calvin Lewis and Ruthie Lewis.
REVERSED.
GAIDRY, J., dissents.
FITZSIMMONS, J., concurs in part and dissents in part and assigns reasons.
FITZSIMMONS, Judge, dissenting, in part, with reasons.
I respectfully dissent, in part, from this court's reversal of liability on the part of Ascension Parish Police Jury and Coregis Insurance Company (Parish). The majority decision correctly concludes that the trial court legally erred in ascribing liability to the Parish on the basis that Ms. Williams, an employee of the Parish, had been previously warned that violence might occur. Given the lack of evidence of prior shooting incidents at the Center, Ms. Williams had not been placed on notice that a shooting might occur on the premises. However, I would affirm, as amended hereinafter, the judgment against the Parish on the basis of Ms. Williams' failure "to inform the police of the fight in a timely manner." [1]
On the evening of the shooting, Officer Tyson Dennis forewarned Ms. Williams during his regular rounds of the probability of a fight between the two antagonistic groups that had assembled. Prior to midnight, a skirmish erupted inside the Center. Shawn Landry, the disc jockey at the Center, estimated that the fight continued for forty-five minutes. As the fight materialized into a brawl, it began to cause damage to Mr. Landry's equipment. Mr. Landry stated that he ultimately pushed the participants out the door. Approximately fifteen minutes after the combatants went outside, Mr. Landry said he heard two gunshots.
Ms. Williams testified that during the evening she primarily stayed in her office inside of the Center, but she went in and out of it frequently. At one point upon exiting the office, she realized there was a problem in the main part of the building, and she was apprised of the ongoing fight by Mr. Landry. Ms. Williams called the police. Ms. Williams additionally testified that she had heard gunshots about twenty minutes prior to the shooting of J.B. Brown.[2]
*44 Deputy Drew Smith testified that the first telephone call reporting a fight was received at 12:10 a.m. Another officer, Deputy Dennis, indicated that he was dispatched to the Center between 11:47 p.m., when the fight was reported, and again at 12:14 a.m., when the sheriff's department was notified of the shooting.
Although testimony differed on the exact delay, the shooting appears to have occurred outside of the building approximately fifteen minutes after the fight inside had been disrupted and the participants had been told to leave. Ms. Williams had been forewarned that the two disparate groups might fight that evening. She also testified that prior fights had occurred; yet, she claims to have been totally unaware of any physical mayhem occurring within the main part of the building of the Center for thirty minutes, or longer. Given this factual setting and the lengthy delays, it is respectfully offered that the trial court did not manifestly err in attributing a portion of fault to Ascension Parish.

LESSEE FAULT
The majority decision theoretically acknowledges the potential existence of fault on the part of the non-party lessee (or lessees) of the Center. Allocation of comparative negligence is a factual matter within the sound discretion of the trial court that should not be disturbed absent manifest error. Thornhill v. State, Department of Transportation and Development, 95-1946, 95-1950, 95-1949, 95-1948, 95-1947, p. 17 (La.App. 1 Cir. 6/28/96), 676 So.2d 799, 810, writs denied, 96-2014 and 96-2021 (La.11/8/96), 683 So.2d 272. Irrespective of any ambivalence in the record as to whether Janice and/or Nyokee Claiborne were the individuals who participated in the written lease agreement, it is not disputed that the premises were being leased by one or more of the Claiborne family for a graduation party for Janice's son. The Claibornes had also leased the Center on another occasion. Nyokee Claiborne testified that, in addition to Janice and herself, there were five adults assisting at the party. The failure of Nyokee and/or Janice or any of the chaperones to report the occurrence of a brawl when it first started or to take any measure to bring the situation under control constitutes negligence on the part of the lessee.
The trial court's manifest error in failing to assess any comparative fault to the lessee, who was in control of the leased premises at the time of the fight and subsequent shooting by Tilicuis Irving should not, however, obviate Ms. Williams' separate legal duty on behalf of the Parish. The trial court correctly found a breach on the part of the Parish in its concluding remarks, to wit: "Ms. Williams failed to inform the police of the fight in a timely manner. Therefore, Ascension Parish breached its duty." [3]
In sum, it is respectfully submitted that the trial court judgment should have been affirmed, as amended, to ascribe five percent fault against Ascension Parish Police Jury and Coregis Insurance Company for Ms. Williams' failure to inform the police of the brawl inside the Parish building and the potential danger within a reasonable time, notwithstanding her presence in the Center and her proximity to the activities. The lessee(s) should have been assessed five percent of the fault, and the ninety *45 percent fault assessed against Tilicuis Irving should have been affirmed.
NOTES
[1] "Tilicius Brown" is also referred to as "Tilicus Brown" and as "Tilicuous Brown" in the record.
[2] Subsequent to the initiation of the suit, Lynn and Dominique Brown were murdered in an unrelated crime.
[3] Shanira Lewis Brown, et al. v. Parish of Ascension, Recreation Department, suit number 60,035, was consolidated on August 26, 1997 with Garnett Brown, et al. v. Ascension Parish, et al., suit number 60,029.
[1] Trial court written reasons for judgment.
[2] Ms. Williams recalled only one prior incident years earlier in which she had heard gunshots; however, she did not know the exact location of the prior gunfire or if the previous incident had involved participants from the Center.
[3] Trial court written reasons for judgment.